**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ARTHUR SUMERLIN, III,

      Petitioner,                         CASE NO. 2:09-CV-10459
                                        HONORABLE GEORGE CARAM STEEH
v.                                     UNITED STATES DISTRICT JUDGE

BLAINE LAFLER,

      Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND**
**DENYING CERTIFICATE OF APPEALABILITY**

## I.  <u>Introduction</u>

This is a habeas case under 28 U.S.C. § 2254 filed by Arthur Sumerlin, ("Petitioner"), a state

inmate confined at a Michigan correctional facility.  Petitioner is serving a mandatory life sentence

as well as lesser terms for his Wayne Circuit Court jury trial conviction of two counts of first degree

murder, MICH. COMP. LAW 750.316, assault with intent to commit murder, MICH. COMP. LAW

750.83, armed robbery, MICH. COMP. LAW 750.529, felon in possession of a firearm, MICH. COMP.

LAW 750.224f, and possession of a firearm during the commission of a felony.  MICH. COMP. LAW

750.227b.  Petitioner claims that he is incarcerated in violation of his constitutional rights.

Respondent, through the Michigan Attorney General's Office, has filed a response, arguing that

Petitioner's claims are without merit and procedurally barred.  For the reasons which follow, the

petition will be denied.

## II.  <u>Procedural History</u>

1

Petitioner's convictions arise from the shooting death of Pia Stanton and Corey Brown, and the assault of Jovan Stanton. Three men broke into Stanton's home, placed pillow cases on the victims' heads and shot them after robbing them of cash and jewelry. Stanton survived a gunshot wound to the head and identified Petitioner as one of the perpetrators. Another man who left the house as the perpetrators arrived also identified Petitioner.

Following his conviction Petitioner pursued an appeal of right in the Michigan Court of Appeals. Petitioner's appointed appellate counsel filed a brief that raised two claims:

> I. Petitioner's convictions should be reversed because there was insufficient evidence to find for them; alternatively the motion for directed verdict should have been granted.

> II. Petitioner is entitled to a new trial where the court refused to instruct the jury as to the lack of production of telephone records.

Petitioner also filed a pro se brief with the Court of Appeals asserting the following additional claim:

> I. Petitioner was denied his right to counsel and a fair trial where a photographic lineup was conducted when Petitioner was not in custody but was the focus of the investigation and his trial attorney's failure to move to suppress the identifications denied him the right to effective assistance of counsel.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *People v. Sumerlin*, 2005 Mich. App. LEXIS 3301 (Mich. Ct. App. Dec. 29, 2005).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same three claims he raised in the Court of Appeals as well as five new claims:

> I. The prosecution and police failure to preserve evidence taken from a SUV Yukon violated Petitioner's Sixth Amendment right to effective cross-examination and his due process rights to a fair trial; and Petitioner was deprived of his Sixth Amendment right to the effective assistance of counsel, where counsel failed to effectively seek out and challenge the missing evidence.

II. The Prosecutor deprived Petitioner of his constitutional right to a fair trial when he engaged in pervasive misconduct designed to bolster the credibility of the prosecution's witnesses, while denigrating the defense and appealed to the sympathies of the jury during rebuttal argument; and Petitioner was deprived of effective assistance of counsel, where counsel failed to object to the misconduct.

III. Petitioner was deprived of his Sixth Amendment right to effective assistance of counsel, by counsel's faulty advice which prevented Petitioner from testifying on his own behalf.

IV. Petitioner was deprived of his Sixth and Fourteenth Amendment rights to effective assistance of appellate counsel, where counsel failed to investigate, research and raise significant issues on appeal of right, that would have required reversal.

V. Petitioner was deprived of his due process rights to a fair trial, by the cumulative effect of errors.

The Michigan Supreme Court denied leave to appeal.  *People v. Sumerlin*, 476 Mich. 855, 718 N.W.2d 342 (2006).

Petitioner returned to the trial court and filed a motion for relief from judgment.  The motion asserted the five new claims that Petitioner raised for the first time in his application for leave to appeal filed in the Michigan Supreme Court.  On October 17, 2007, the trial court issued an order denying Petitioner's motion for relief.  The trial court found that the claims were barred from review:

Defendant has not shown "good cause" under Michigan Court Rule 6.508(D)(3) as to why the issues presented in this motion were not previously raised on appeal. Further, he has not proven actual prejudice.

Opinion and Order, at 4.

Petitioner filed a delayed application for leave to appeal the trial court's decision in the Michigan Court of Appeals, but the court denied Petitioner's delayed application "for failure to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D)." *People v. Sumerlin*, Mich. Ct. App. No. 282943 (May 19, 2008).  The Michigan Supreme Court subsequently denied leave to appeal by citing to the same court rule. *People v. Sumerlin*, 482 Mich. 1063, 757

3

N.W.2d 474 (2008).

Petitioner's application for writ of habeas corpus raises the following claims:

I. Petitioner was denied his right to counsel and a fair trial where a photographic lineup was conducted when Petitioner was not in custody but was the focus of the investigation and his trial attorney's failure to move to suppress the identifications denied him the right to effective assistance of counsel.

II. The Prosecutor deprived Petitioner of his constitutional right to a fair trial when he engaged in pervasive misconduct designed to bolster the credibility of the prosecution's witnesses, while denigrating the defense and appealed to the sympathies of the jury during rebuttal argument; and Petitioner was deprived of effective assistance of counsel, where counsel failed to object to the misconduct.

III. Petitioner was deprived of his Sixth Amendment right to effective assistance of counsel, by counsel's faulty advice which prevented Petitioner from testifying in his own defense.

IV. Petitioner was deprived of his Sixth and Fourteenth Amendment rights to effective assistance of appellate counsel, where counsel failed to investigate, research and raise significant issues on appeal of right, that would have required reversal.

V. Petitioner was deprived of his due process rights to a fair trial, by the cumulative effect of errors.

### III. <u>Facts</u>

The evidence presented at trial showed that on August 17, 2003, Pia Stanton was at her house in Detroit with her niece, Jovan Stanton, Jovan's boyfriend, Corey Brown, Jovan's eight-year-old sister, Alexus Berry, and Jovan's ten-year-old cousin, Armanda Stanton. At around 1:00 p.m., Pia Stanton's friend, Andre Dixon, came to the house. While he was there, Dixon heard Pia Stanton answer a telephone call, and about ten to fifteen minutes after that call, someone came to the door. As Dixon left the house, he saw two or three men on the porch, including a man he later identified as Petitioner.

Jovan, Brown, Alexus, and Armanda were upstairs. Armanda saw Dixon leave the house

as the men came in.  One of the men, identified by Jovan as Petitioner and by Armanda as Horace Clark, then came upstairs and ordered them to put pillow cases over their heads.  Jovan complied but left the pillowcase pulled up on one side.  Petitioner or Horace Clark then took Jovan, Brown, Alexus, and Armanda downstairs at gunpoint.

When they arrived on the main floor, Pia Stanton was on the floor near the front door, wrestling with one man while another stood by.  Jovan identified co-defendant Horace Clark as the man wrestling with Pia Stanton and co-defendant Donmisce Clark as the man standing next to her.  Armanda, on the other hand, identified Petitioner and co-defendant Donmisce Clark as the men wrestling with Pia Stanton.

Petitioner led Jovan, Brown, Armanda, and Alexus into the basement at gunpoint.  Once in the basement, Petitioner ordered them to sit on the floor.  They heard bumping noises from upstairs, then heard a gunshot.  After the gunshot, the bumping noises stopped.

Petitioner ordered Jovan to give him her jewelry and her money, and Jovan complied.  Donmisce Clark then came downstairs and told Petitioner to take them into the basement bathroom.  Jovan, Armanda, and Alexus all went into the bathroom, but Brown stayed outside.  Jovan and Brown talked through the bathroom door for a few minutes.  The girls then heard another gunshot, this time from the basement, and Brown fell silent.

Petitioner then ordered Jovan out of the bathroom, and told the two girls that if anyone asked who did it, they were to respond that "Chi-Town" did.  Jovan felt a gun pushed against her head on the other side of the pillowcase and was shot in the head.  When she regained consciousness, she waited until she did not hear any noises in the house and then let Armanda and Alexus out of the bathroom.  Brown lay dead on the floor of the basement.  They went upstairs and saw Pia Stanton

5

laying in the middle of the floor, bleeding from a shot to the head.  They noticed that a black Yukon was missing, and the car keys were gone.

Jovan called 9-1-1, and when the police arrived, she was on the front porch holding the pillowcase to her head.  Jovan spent two days in Henry Ford Hospital.  Both Pia Stanton and Corey Brown died from a single gunshot wound to the head.  Jovan told an officer at the scene that one of the men was Horace Clark, whom she had known for years as "TJ."  She also stated that the man later identified as Petitioner had gold teeth.  Although Petitioner did not have gold teeth at the time of trial, Investigator Frazer Adams testified that one can purchase removable gold teeth that fit over one's existing teeth.

On September 4, 2003, Jovan looked at a photographic array and identified Petitioner.  On September 25, 2003, she looked at a second photographic array and identified Donmisce Clark. Alexus never identified any of the men.  Armanda was shown three photographic arrays, but did not identify anyone.  She did, however, identify Petitioner, and co-defendants Horace and Donmisce Clark at trial.  She admitted that she told the police at the scene that two of the men were named Eric and Mike, but said she had heard those names from her aunt's friend, Lattonya Ware.

Investigator Frazer Adams eventually went to Atlanta, Georgia to contact Donmisce Clark and Petitioner.  He spoke to Petitioner, who at the time was not under arrest or in custody.  Petitioner stated that he came to Detroit on August 16, 2003, with Donmisce Clark to buy drugs.  They went to Horace Clark's house, and then the three men went to Pia Stanton's house to buy the drugs.  Pia Stanton told them she was out of drugs and would call when she got more.  The men left, and Donmisce Clark called Pia Stanton the next day to see if she had any drugs.  She called back and spoke to Donmisce Clark, and then all three men went back to her house.

6

Petitioner stated that they arrived at Pia Stanton's home around 2:00 p.m., and another man was leaving as they arrived. Two other men were at the home. Petitioner, Donmisce Clark, and Horace Clark went to the kitchen, got their drugs, and left. Petitioner and Donmisce Clark took Horace Clark back to his house, and then left for Georgia. According to Petitioner, about thirty minutes to an hour after they had started back to Georgia, Horace Clark's girlfriend called Donmisce Clark and told him that Horace Clark had killed Pia Stanton. Petitioner and Donmisce Clark threw the drugs out of the car and continued to Georgia. Petitioner stated that when they went to buy the drugs, none of the men had a gun and no one shot anyone else.

Horace Clark's ex-girlfriend, Katrina Brown, testified that Horace Clark, Petitioner, and Donmisce Clark were at her house on August 17, 2003, and got a call from a woman. After Donmisce Clark spoke to the woman, the men left and never returned. About thirty to forty minutes after the men left, Derek Ware called Katrina Brown and told her that Horace Clark had shot someone. Katrina called Horace Clark at his grandfather's house in Detroit and arranged a conference call between herself, Derek Ware, and Horace Clark. Derek Ware then told Horace Clark that he had heard that Clark had killed someone.

Petitioner, Donmisce Clark, and Horace Clark were charged with two counts of first-degree murder and two counts of felony-murder for the deaths of Pia Stanton and Corey Brown, as well as one count of assault with intent to murder regarding Jovan Stanton. In addition, Petitioner was charged with armed robbery, felon in possession of a firearm, and felony firearm. After a joint jury trial the jury convicted the defendants as charged.

## IV.  **Analysis**

### A.  **Standard of Review**

7

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).  However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); see also *Williams*, 529 U.S. at 409.  "A state court's determination that

8

a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*,    U.S.   , 131 S. Ct. 770, 789, 178 L. Ed. 2d 624 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show  that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412.  Section 2254(d) "does not require citation of [Supreme Court] cases — indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).  "[W]ile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

9

## B. **Identification Procedure**

Petitioner first claims that the photographic line-up procedure was conducted in violation of his Sixth Amendment right to counsel because there was no attorney representing his interests in attendance at the procedure.  He also asserts that his trial counsel was ineffective for failing to challenge the admissibility of the resulting identification testimony.  Respondent asserts that the state court's adjudication of the claim was reasonable.

The Michigan Court of Appeals considered and rejected this claim as follows:

> Finally, in a supplemental standard 4 brief, defendant argues that he was denied his right to counsel and a fair trial when photographic lineups were conducted, where he was not yet in custody but was the focus of the investigation. As part of this argument, defendant additionally contends that his attorney was ineffective for failing to move to suppress the identifications based on lack of counsel.  According to defendant, his attorney should have had the photographic identifications thrown out and then counsel should have argued that there was no independent basis for the in-court identifications.

> Only cursory treatment need be given to this argument.  In *People v. Hickman*, 470 Mich. 602, 607, 611; 684 N.W.2d 267 (2004), our Supreme Court held that the right to counsel attaches only to identifications conducted at or after the initiation of adversarial judicial criminal proceedings, such as by formal charge, a preliminary hearing, an indictment, an information, or an arraignment.  The Court stated, "To the extent that *People v. Anderson*, 389 Mich. 155; 205 N.W.2d 461 (1973), goes beyond the constitutional text and extends the right to counsel to a time before the initiation of adversarial criminal proceedings, it is overruled." *Id*. at 603-604.  The cases relied on by defendant arose out of the now-rejected *Anderson* decision.  The first photographic array with Jovan Stanton in which she identified defendant was undertaken prior to the initiation of adversarial judicial criminal proceedings. n13  Moreover, the police record relied on by defendant indicates that a show-up attorney was indeed present at this initial photo lineup in order to protect the rights of any suspects identified by the witnesses.  The record indicates that a second and third photo lineup with other witnesses in which defendant was identified took place on September 25, 2003.  Again, the record reflects that counsel was present at these lineups or arrays.  There was no error, and counsel was not ineffective for failing to pursue a meritless position. *People v. Darden*, 230 Mich. App. 597, 605; 585 N.W.2d 27 (1998).

*Sumerlin*, 2005 Mich. App. LEXIS 3301, at *35-37.

10

Under clearly established Supreme Court law, a pre-trial photographic identification is not a critical stage under the Sixth Amendment at which counsel is required to be present. *United States v. Ash*, 413 U.S. 300, 321 (1973). Petitioner has no federal constitutional right to have counsel present at an investigative photographic identification procedure at which he or she is identified. *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1071 (E.D. Mich. 2000); *see also Payne v. Smith*, 207 F. Supp. 2d 627, 645 (E.D. Mich. 2002) (Sixth Amendment does not guarantee the accused the right to counsel at a photographic array). Therefore, even setting aside the finding of the state appellate court found that a defense attorney was present at the procedure, Petitioner is not entitled to habeas relief based on this claim because he had no constitutional right to counsel at that stage of the investigation.

Petitioner's claim that his trial attorney was ineffective for failing to object to the identification procedure under state law is also unavailing. Under the Michigan Constitution, the right to counsel at a photographic identification attaches once the prosecutor initiates adversarial judicial criminal proceedings. *People v. Hickman*, 470 Mich. 602, 607 (2004); *See Mattox v. Davis*, 549 F. Supp. 2d 877, 930 (W.D. Mich. 2008). Here, the identification procedure occurred on September 4, 2003. The formal felony complaint - as opposed to the arrest warrant referred to by Petitioner - was filed on September 10, 2003. Thus, Petitioner had no right to counsel at the identification procedure under state law either. Moreover, the state appellate court made a factual finding that an attorney was present at the identification procedure. This factual finding is presumed to be true. 28 U.S.C. § 2254(e)(1). Therefore, because Petitioner's state-law based claim is meritless, his trial counsel was not ineffective for failing to raise the claim in the trial court. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th

11

Cir. 2007).

## C. Claims Raised in Motion for Relief From Judgment

Respondent contends that review of Petitioner's remaining claims is barred by procedural default because Petitioner presented them to the state courts on collateral review and those courts relied upon a procedural bar to deny him relief.

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). The last explained state court judgment should be used to determine whether a state court relied upon a procedural rule in denying relief. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

Petitioner presented his remaining claims to the state courts in his motion for relief from judgment. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. See MICH. CT. R. 6.508(D)(3). The United States Court of Appeals for the Sixth Circuit has recently held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to

12

whether it refers to a procedural default or a rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc).  Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

In this case, the state trial court denied relief on procedural grounds.  The trial court cited Michigan Court Rule 6.508(D)(3)(a) and concluded that Petitioner had not shown cause, i.e., that appellate counsel was ineffective, or prejudice because his underlying claims lacked merit, nor had he demonstrated his actual innocence.  Accordingly, these claims are procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

Petitioner's fourth habeas claim asserts ineffective assistance of appellate counsel as cause to excuse the procedural default of his other claims.  Petitioner has not shown that appellate counsel was ineffective.  In order to establish ineffective assistance of appellate counsel, Petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  In determining whether counsel's performance was deficient,

> [t]he court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland v. Washington*, 466 U.S. 668, 690 (1984).  Therefore, judicial scrutiny of counsel's

13

performance must be "highly deferential." *Id.* at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his motion for relief from judgment appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented legitimate and viable issues concerning the

14

sufficiency of the evidence and the failure of the trial court to instruct the jury on the prosecutor's failure to produce telephone records.  Petitioner has not shown that appellate counsel's strategy in presenting these claims and not raising the claims contained in the motion for relief from judgment was deficient or unreasonable.  Moreover, the unraised claims, prosecutorial misconduct, ineffective assistance of counsel for failing to advise Petitioner to testify, and cumulative error, are certainly not "dead bang winners."  The claimed acts of misconduct were not objected to at trial, and were therefore not preserved for appeal.  And the decision to advise Petitioner not to testify was presumptively a reasonable strategic one.  Petitioner has thus failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default.

A federal court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).  Petitioner's second, third, fourth, and fifth claims are thus barred by procedural default and do not warrant federal habeas relief.

## IV.  Conclusion

The Court will deny the Petition for Writ of Habeas Corpus.  The Court will also deny Petitioner a Certificate of Appealability.  Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R.APP. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  Likewise, when a district court denies a habeas

15

petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack,* 529 U.S. at 484.   When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further.   In such a circumstance, no appeal would be warranted. *Id.*   "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.  For the reasons stated in this opinion, the Court will deny a Certificate of Appealability because jurists of reason would not find this Court's resolution of Petitioner's claims to be debatable or that he should receive encouragement to proceed further. *Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

16

**V.  Order**

IT IS ORDERED that the Petition for Writ of Habeas Corpus is **DENIED.**

IT IS FURTHER ORDERED that a Certificate of Appealability is **DENIED.**

**Dated:  June 6, 2011**

**S/George Caram Steeh**
**GEORGE CARAM STEEH**
**UNITED STATES DISTRICT JUDGE**

---

**CERTIFICATE OF SERVICE**

Copies of this Order were served upon attorneys of record on June 6, 2011, by electronic and/or ordinary mail and also to Arthur Sumerlin at Ryan Correctional Facility, 17600 Ryan Road, Detroit, MI 48212.

**S/Josephine Chaffee**
**Deputy Clerk**

---

17